SAMUEL, Judge.
Elizabeth Lee Hanna was the maker of three promissory notes payable to the order of Hibernia Bank and Trust Company in New Orleans (hereinafter referred to as the Bank) all dated December 2, 1932, and payable January 16, 1933, in the amounts of $39,450, $9,800 and $650. These notes provided that they were to be secured not only by the pledge of the securities or property listed and described on the reverse thereof but also by “* * * all other securities and/or property of every nature whatsoever that may now or hereafter be in transit to or from said bank or be delivered to or left in the possession or under the control of said bank (alone, or with others) for any purpose whatsoever by the parties' hereto, and any one or more of them, ‡ ‡»
The Bank subsequently went into liquidation and on -December 5, 1951, under the supervision of the Civil District Court for the Parish of Orleans, these notes and numerous other assets were sold at auction. Advertisements announced the sale as per' a list of assets on file with the auctioneer.' This list contained the three Hanna notes with the parenthetical notation “unsecured”. Plaintiff was a successful bidder at the sale and the three notes were transferred and delivered to him by the Bank in Liquidation under an endorsement reading “Without recourse or warranty. For transfer only”.
Elizabeth Lee Hanna was also the owner of 625 shares of the capital stock of the Bank, which shares were held by the Bank and are presently being held by the liquidator for her account. She is now deceased-' and her succession is presently under ad-' ministration. The stock now has no monetary value.
Approximately 10 years before the sale of the notes to plaintiff the State Bank Commissioner and the liquidator of the Bank in Liquidation filed suit against the heirs of Elizabeth Lee Hanna (No. 247-929 of the Docket of the Civil District Court for the Parish of Orleans) on four notes, the three notes involved herein and one additional note upon which Elizabeth Lee Hanna was an endorser, alleging that the four notes were secured by the aforesaid 625 shares of capital stock. This suit was dismissed on exceptions as to some of the defendants and later dismissed as abandoned as to other defendants.
Sometime after receiving delivery of the notes plaintiff demanded that the liquidator deliver the 625 shares of capital stock to him. The demand was refused and plaintiff filed this suit seeking to obtain possession of the stock. He has appealed from a judgment dismissing the rule.
*549 Plaintiff contends that under the omnibus provision of the notes, set our here-inabove, they were secured by pledge of the stock in possession of the Bank and now the liquidator and such pledge follows the sale of the notes. He relies on LSA-Civil Code, Art. 264S which provides: “The sale or transfer of a credit includes every thing which is an accessory to the same; as suretyship, privileges and mortgages.”
There is no indication on the notes themselves that the stock was ever pledged to secure their payment, although notations of other collateral are to be found on the reverse of two of the notes. With only two exceptions the record is devoid of any showing as to how or under what circumstances the stock came into or remained in the possession of the Bank or the liquidator. These exceptions are the above mentioned allegation of the bank commissioner and the liquidator in their suit against the heirs of the maker and a letter from the Special Agent of the Bank in Liquidation, addressed to plaintiff and introduced into evidence, which states that the stock came into their possession as a result of being put into the hands of an employee of the Bank. ' 1
Pretermitting LSA-R.S. 6:245 and its possible effect on the validity of such a pledge, under the omnibus provisions of the notes both the Bank and the Bank in Liquidation were authorized to consider the capital stock as a pledge to secure the payment thereof. The fact that the Bank in Liquidation did consider the stock as pledged is indicated by the allegation to that effect in their suit to collect against the heirs of Hanna. The record fails to reveal that the situation has changed in any manner between the time of the filing of that suit and the commencement of proceedings by the liquidator to sell the notes with the other assets. However, whether or not we accept as a proven fact that the stock was held by the liquidator as collateral security is unimportant here because the sale of the notes as unsecured constituted a waiver of the pledge (72 C.J.S. Pledges § 27), a fact known to the plaintiff-purchaser as a result of the advertisement and the listing and emphasized by his acceptance of the notes without the stock.
An individual holder of a note secured by a pledge would certainly have the right to sell that note as unpledged if he desired to do so, the only obligation attached to such a procedure being the necessity of returning the pledged property to the pledgor. In the instant case the Bank in Liquidation is not such a free agent. It could take such action only under the supervision of the court. But the court did authorize the sale of the notes as unsecured. We are of the opinion, therefore, that the listing of the notes as unsecured constituted a valid condition of their sale and that the palintiff made the purchase under that restriction. He has acquired unsecured notes and is not entitled to the bank stock which he claims.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.